**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

FLEET CONNECT SOLUTIONS LLC,

v.

PORTABLE MULTIMEDIA LTD T/A
NEXTBASE.

Case No.: 2:24-cv-01054-JRG-RSP

**DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S
INFRINGEMENT CONTENTIONS OR, IN THE ALTERNATIVE,
TO COMPEL PLAINTIFF TO COMPLY WITH PATENT RULE 3–1 AND
<u>SUPPLEMENT INTERROGATORY RESPONSES</u>**

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND ....................................................................................................2

III.  LEGAL STANDARD .............................................................................................3

IV.   ARGUMENT ..........................................................................................................4

    A.    FCS Fails To Link Asserted Claims To A Specific Standard.................................4

        1.    FCS Does Not Identify A Particular
              Standard For Each Claim Limitation ..........................................................4

        2.    FCS Relies In Part On Third-Party Materials, Not Standards ....................5

        3.    FCS Cites Multiple Versions Of Standards Without Reconciling Them ....6

        4.    FCS Parrots Claim Language And Block Quotes Without Explanation .....7

    B.    FCS Fails To Show How Accused Products Conform To A Standard...................7

        1.    FCS Cannot Rely On Advertised "Compliance" Absent Essentiality.........7

        2.    No Showing How Accused Products Allegedly Conform To Standards ....8

        3.    FCS Ignores Multiple Optional Implementations In The Standards ..........9

    C.    FCS Fails To Provide Any Clear Infringement Theory........................................11

        1.    FCS Relies On Screenshots, Block Quotes,
              And Parroted Language Without Linking To Product Features ...............11

        2.    FCS's Contentions Are An "Unintelligible Maze"
              That Do Not Reveal A Discernible Infringement Theory ........................12

V.    FCS'S INFRINGEMENT CONTENTIONS SHOULD
      BE STRICKEN OR SUPPLEMENTATION COMPELLED ...........................................13

VI.   CONCLUSION......................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alacritech Inc. v. CenturyLink, Inc.*,
2017 WL 3007464 (E.D. Tex. July 14, 2017) ........................................................... 6

*Computer Acceleration Corp. v. Microsoft Corp.*,
503 F. Supp. 2d 819 (E.D. Tex. 2007) ........................................................... 3, 14, 15

*Connectel, LLC v. Cisco Sys., Inc.*,
391 F. Supp. 2d 526 (E.D. Tex. 2005) ..................................................... 3, 11, 12, 14

*Hybrid Audio, LLC v. High Tech Comput. Corp.*,
No. 6:11CV195 LED-JDL, 2012 WL 12502182 (E.D. Tex. Nov. 2, 2012)..................... 4, 8, 9

*Linex Techs., Inc. v. Belkin Int'l, Inc.*,
628 F. Supp. 2d 703 (E.D. Tex. 2008)........................................................... passim

*Motorola, Inc. v. Analog Devices, Inc.*,
No. 1:03-CV-131, 2004 WL 5633735 (E.D. Tex. Apr. 8, 2004)........................................ 13, 14

*Rapid Completions v. Baker Hughes Inc.*,
No. 6:15-CV-724, 2016 WL 3407688 (E.D. Tex. June 21, 2016) ..................................... 11, 13

*Realtime Data, LLC v. Rackspace US, Inc.*,
2017 WL 1927749 (E.D. Tex. May 10, 2017).......................................................... 11

*Revolaze LLC v. J.C. Penney Corp., Inc.*,
No. 2:19-CV-00043-JRG, 2020 WL 2220158 (E.D. Tex. May 6, 2020) ............................. 14

*Secure Axcess LLC v. HP Enter. Servs., LLC*,
No. 6:15-CV-208, 2016 WL 7042229 (E.D. Tex. Sept. 20, 2016).................................. passim

*Traxcell Techs., LLC v. Huawei Techs. USA Inc.*,
2017 WL 6559256 (E.D. Tex. Dec. 21, 2017)........................................................ 13

*Universal Connectivity Techs., Inc. v. Lenovo Grp. Ltd.*,
No. 2:23-cv-00449-JRG, 2025 WL 1144734 (E.D. Tex. Apr. 15, 2025) ........................... passim

*Williams Wireless Techs., Inc. v. Rsch. in Motion Corp.*,
No. 4:06CV305, 2007 WL 1932806 (E.D. Tex. May 31, 2007) ............................................ 15

**Rules**

E.D. Tex. P.R. 3-1............................................................................... 1, 3, 15

E.D. Tex. P.R. 4–1 ................................................................................................................. 3

## I.    <u>INTRODUCTION</u>

Defendant Portable Multimedia Ltd. T/A Nextbase ("Nextbase") respectfully moves to strike Plaintiff Fleet Connect Solutions LLC's ("FCS") infringement contentions for failure to comply with Patent Rule ("P.R.") 3–1, or in the alternative, to compel supplemental infringement contentions and supplemental responses to Nextbase's First Set of Interrogatories.

FCS purports to rely on various "standards" but does not contend that any asserted claim is essential to any standard or necessarily practiced by supporting any standard. FCS's infringement contentions do not provide the notice required by P.R. 3–1. If FCS's infringement theory relies on the Accused Products complying with a standard, then contentions must at least: (1) identify a particular version of a particular standard; and (2) demonstrate that practicing that standard necessarily infringes each asserted claim element. This requires that the asserted claims are essential to the identified standard. But FCS has not contended that the asserted patents are essential to any standard. § IV.B.1, *infra*. Thus, compliance alone is insufficient.

Absent standard-essential claims, FCS's infringement contentions must specifically identify where each asserted claim element is found within each Accused Product, either by linking each claim limitation to a particularly identified standard (§ IV.A, *infra*) and showing how each Accused Product conforms to that standard (§ IV.B, *infra*), or directly tying a specific aspect of each Accused Product to each asserted claim element. FCS does neither, instead presenting an unintelligible maze of block quotes, screenshots, and other excerpts that make it impossible to discern a cognizable infringement theory. § IV.C.1, *infra*; *see also* § IV.A.4, *infra*.

These deficiencies prejudice Nextbase because proposed claim terms are due for exchange in less than a month. Without a clear infringement theory, Nextbase cannot identify which standard implementations matter, which product configurations are accused, and ultimately which claim

terms are at issue.

Therefore, FCS's infringement contentions should be stricken. Or, at a minimum, FCS should be compelled to supplement its contentions to provide notice conforming with P.R. 3–1 along with supplemental interrogatory responses that confirm whether it contends any asserted claims or claim elements are essential to any standard. If so, then contention charts demonstrating each asserted claim element is essential to an identified standard are required. If not, then charts linking each element of an asserted claim to specific aspects of the Accused Products are required.

## II.  **BACKGROUND**

In March, FCS served infringement contentions for seven asserted patents. The contentions include Nextbase marketing screenshots annotated to highlight a variety of wireless standards (*e.g.*, 802.11b/n/ac), and principally map asserted claim elements not to products but to various excerpts from standards and other third-party materials. Exs. A–N.[1] On May 27, Nextbase served interrogatories about which, if any, parts of asserted claims are allegedly essential to a standard:

> If You contend that the technology covered by any asserted claim in any of the patents-in-suit is necessary or essential to the practice or use of any Standard, or any portion of any Standard, state the basis for that contention, including how each such asserted claim in the patents-in-suit is practiced (in whole or in part) by using each applicable Standard and which portion of the Standard is relevant to Your contention.

Ex. O at 8 (Interrogatory No. 1); *see also id.* Interrogatory Nos. 2, 5. On June 26, FCS served responses providing, *inter alia*:

> At present, Fleet Connect does not contend that the Asserted Patents have been deemed essential to any standard by any standard-setting organization, it is aware of no facts that would give rise to any duty to disclose any of the Asserted Patents to any standards-setting organization, and there are no facts of which Fleet Connect is aware that would require the Asserted Patents to be deemed essential by any standard-setting organization.

---

[1] Exhibits cited herein are attached to the Declaration of Arie Pellikaan, unless otherwise noted.

Ex. P at 8. Nextbase sent letters on July 31 and August 22 identifying deficiencies in FCS's infringement contentions. Exs. Q–R. The parties met and conferred regarding these deficiencies on September 10, and FCS has declined to supplement its infringement contentions or interrogatory responses related to standards. Meanwhile, the parties are scheduled to exchange proposed claim terms under P.R. 4–1 on October 16. Dkt. No. 18 at 5.

## III.    LEGAL STANDARD

The Local Patent Rules "exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases." *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007). Consistent with that goal, P.R. 3–1 requires infringement contentions to include "a chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality." E.D. Tex. P.R. 3–1(c).[2] Compliance demands that a plaintiff set forth "particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patent [claims] themselves." *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 528 (E.D. Tex. 2005).

Charting an industry standard does not abrogate these requirements. *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 711 (E.D. Tex. 2008) ("The 802.11n standard is not an exemplary product for the purposes of Infringement Contentions"). Rather, where a patentee elects to rely on a standard, its contentions must both "(1) link each claim limitation to the particular

---

[2] Patent Rule 3–1(c) also requires "for each element that such party contends is governed by 35 U.S.C. § 112 (¶ 6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function." This case's Discovery Order provides procedures "[i]f a party claiming patent infringement asserts that a claim element is a software limitation . . ." Dkt. No. 16 at 3. FCS has done neither, indicating that none of the claim elements are asserted under § 112(f) or may be considered software limitations.

standard and (2) show how each accused product . . . conforms to that standard." *Universal Connectivity Techs., Inc. v. Lenovo Grp. Ltd.*, No. 2:23-cv-00449-JRG, 2025 WL 1144734, at *3 (E.D. Tex. Apr. 15, 2025) (citing *Linex*, 628 F. Supp. 2d at 708). Thus, standards-based infringement contentions must "demonstrate not only how each asserted claim is linked to the industry standard, but how each accused product conforms to the standard." *Hybrid Audio, LLC v. High Tech Comput. Corp.*, No. 6:11CV195 LED-JDL, 2012 WL 12502182, at *2 (E.D. Tex. Nov. 2, 2012) (citing *Linex*, 628 F. Supp. 2d at 707–09).

## IV.    ARGUMENT

### A.    FCS Fails To Link Asserted Claims To A Specific Standard

FCS's contention charts fail to link each claim limitation to a particular standard by (1) not selecting a particular standard, (2) substituting third-party materials for standard provisions, (3) mixing multiple standard versions without reconciliation or explanation, and (4) parroting claim language and copy-and-pasting block quotes without explanation.

#### 1.    FCS Does Not Identify A Particular Standard For Each Claim Limitation

Many of FCS's infringement contentions fail to identify any particular standard, much less link asserted claim elements to any required standard provisions. For example, the '845 patent contention charts (Exs. I-J) and one '053 patent chart (Ex. M) fail to allege that the Accused Products practice any particular standard. While these charts each annotate a recitation of multiple supported standards (*e.g.*, 802.11b/n; Bluetooth 4.1/4.2/5.0) in various Nextbase marketing materials and FCC screenshots, none identifies a particular standard. *E.g.*, Ex. I at 26 (suggesting 802.11b as an example medium), 31 (discussing 802.11 generally); Ex. J at 28, 29 (same). Meanwhile, the other '053 patent chart (Ex. N) alleges a wide variety of different WiFi, Bluetooth, and cellular standards for different claim elements. *E.g.*, Ex. N at 10 ("either . . . LTE . . . or the

802.11b/802.15.1 protocols"), 54 ("non-LTE cellular, WLAN, and/or Bluetooth transceivers . . . 802.11 and/or cellular data"), 93 ("802.11n"). An additional '040 patent chart (Ex. F) identifies 802.11b WiFi but fails to provide any evidence from the 802.11b standard. Ex. F.

None of the contention charts F, J, and M is limited to an actual wireless standard, relying instead on the withdrawn 802.15.2-2003 Recommended Practice that does not represent modern approaches to WiFi/Bluetooth coexistence.[3] *E.g.*, Ex. F at 15; Ex. J at 28–29; Ex. M at 67. Likewise, rather than a standard, another '053 patent contention chart (Ex. N) relies on an entirely informative (*i.e.*, explanatory) 3GPP Technical Report for key elements of all three independent claims (1, 10, and 19).[4] Ex. N at 92, 189, 338. These contention charts (Exs. F, J, M, and N) "fall completely outside of the logical syllogism [that FCS] tries to rely on" because they fail to tie even asserted independent claims to a particular wireless standard. *Cf. Linex*, 628 F. Supp. 2d at 710.

### 2.     FCS Relies In Part On Third-Party Materials, Not Standards

Rather than actual wireless standards (*e.g.*, 802.11b/n/ac), FCS's infringement contentions often rely on various unproduced third-party materials. For example, charts frequently excerpt webpages (*e.g.*, mathworks.com, rfmw.em.keysight.com, sharetechnote.com, slideplayer.com, techplayon.com, ourtechplanet.com, the.gearbrain.com, a broken link to raiith.iith.ac.in), vendor whitepapers, academic theses, theoretical papers, entirely informative Technical Reports ("TRs"), and a withdrawn recommended practice (802.15.2-2003). *See* Exs. A–M. These non-standard materials are insufficient because they do not link asserted claim elements to anything mandated

---

[3] *See* IEEE SA - IEEE 802.15.2-2003 ("Inactive-Withdrawn Standard"); 15-18-0101-00-0000-comment-resolution-database-for-withdraw-of-ieee-802-15-2.xlsx ("no longer relevant in the market"). Also, TR 36.816 v1.0.0 cited in FCS charts was not produced and cannot be located.

[4] *See* ETSI - ICT standards, European Norms, Technical Specifications, Technical Reports, Guides ("Technical Report (TR) – Used when the document contains explanatory material."); ETSI Directives - Version 43 - part2 (EDR) - 20 May 2021 at pdf p. 15 ("ETSI deliverable types . . . TR . . . are entirely informative").

for standard-conforming devices. *See Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693-JRG-RSP (lead case), 2017 WL 3007464, at *3 (E.D. Tex. July 14, 2017) ("plaintiff's citations to . . . third-party publications did not specifically identify where any elements of the asserted claims were found"). For example, contention charts for the '583, '616, and '388 patents excerpt webpage helpfiles for Keysight Technologies' Vector Signal Analysis (89600 VSA Software). *E.g.*, Ex. A at 27; Ex. C at 25–26; Ex. K at 22. Contention charts for the '040 and '845 patents (Exs. E and I) link to a webpage (https://slideplayer.com/slide/14024309/) that resolves to an irrelevant "Live Crypto Prices & Market Cap Charts" webpage. *See* Pellikaan Decl. ¶ 9; Ex. T; Ex. E at 16; Ex. I at 23. Nothing in FCS's infringement contentions links 89600 VSA Software or cryptocurrency price tracking to the asserted claims or Accused Products. These and other irrelevant materials cannot support a standard-based theory because they are not standards.

### 3. FCS Cites Multiple Versions Of Standards Without Reconciling Them

Even when referring to actual standards, FCS's contentions often rely on multiple different versions. "Pointing to multiple versions of a standard is potentially problematic" due to the ambiguity of claims reading on one version while products conform to another. *Secure Axcess LLC v. HP Enter. Servs.*, LLC, No. 6:15-CV-208, 2016 WL 7042229, at *4 (E.D. Tex. Sept. 20, 2016). Therefore, contentions "may not simply link one claim limitation to one version of the standard and another claim limitation to another version of the standard without showing why it would be the same in all versions." *Id.*; *see also Universal Connectivity*, 2025 WL 1144734, at *3 ("An accused product may support or comply with one version of a standard but not support or comply with another version of the same standard. One version of a standard may infringe an asserted patent, while a different version may not."). Here, for example, contention charts for the '583, '616, '153, and '053 patents each rely on ETSI Technical Specifications for multiple LTE versions.

Exs. A (v8, v10); C (same); G (v10, v11); N (v11, v12). Together, these contentions chart four distinct LTE versions without reconciliation, leaving Nextbase "to guess how and to which version of an accused standard the claims might apply." *Universal Connectivity*, 2025 WL 1144734, at *3.

### 4. FCS Parrots Claim Language And Block Quotes Without Explanation

FCS's contentions often provide no explanation linking asserted claim elements to a standard. For example, one '616 patent contention chart (Ex. D) parrots the key "processing, in the parallel path to the determining step . . ." claim element and excerpts a figure from 802.11ac-2013, without any explanation tying the claim element to the standard excerpt. Ex. D at 9–10 (citing 802.11ac-2013 at 317). This defect recurs throughout FCS's contentions. *See*, *e.g.*, Exs. A at 35–39; B at 9–10; C at 37–41; G at 23–25; H at 22–23; K at 35–41; L at 21–22.

### B. FCS Fails To Show How Accused Products Conform To A Standard

FCS's contentions cannot show infringement because (1) compliance with a standard does not support infringement for non-essential claims, (2) standards are presented as excerpted block quotes with nothing linking them to the Accused Products, and (3) the contentions rely on optional implementations without discussing the actual Accused Products' configurations.

### 1. FCS Cannot Rely On Advertised "Compliance" Absent Essentiality

FCS's contentions rest "on each Accused Product's advertised compliance" with 802.11n and other wireless standards. *Linex*, 628 F. Supp. 2d at 708. Most of FCS's charts assert or create the inference that the Accused Products utilize, can communicate according to, are adapted for, or otherwise comply with one or more wireless standards. *E.g.*, Exs. A–H at 2; K–L at 2. But this only supports infringement if a conforming device's compliance with the standard necessarily infringes the asserted claims. *Secure Axcess*, 2016 WL 7042229, at *4. Such infringement theories require the asserted claims to be standard-essential, such that standard-compliant devices can only be configured to satisfy every asserted claim element. *Id*. (finding plaintiff failed to show that "the

Accused Products use the same implementation technique—and that specific technique necessarily infringes the patents-in-suit"); *see also Universal Connectivity*, 2025 WL 1144734, at *3 ("Plaintiff must confirm whether the asserted patents are necessary or essential to any relevant standard"); *Linex*, 628 F. Supp. 2d at 708–09 (finding plaintiff failed to "set forth . . . how an 802.11n-compliant device would necessarily infringe"); *Hybrid Audio*, 2012 WL 12502182, at *3 ("some standards provide optional sections and therefore practice of a standard does not necessarily implicate practice of the option").

Here, FCS "does not contend that the Asserted Patents have been deemed essential to any standard," Ex. P at 8, nor has it otherwise alleged essentiality. Therefore, FCS's infringement contentions cannot rely solely on alleged compliance with any standard, and must instead "show how each accused product . . . meets each claim limitation, as required by the local patent rules, without reliance on any standard." *Universal Connectivity*, 2025 WL 1144734, at *3.

### 2.    No Showing How Accused Products Allegedly Conform To Standards

FCS fails to show how the Accused Products conform to any wireless standard. Absent contending that the asserted claims are standard-essential, FCS must explain "how each Accused Product is asserted to infringe each claim limitation." *Linex*, 628 F. Supp. 2d at 709. The court in *Linex* reasoned that compliance alone with 802.11n was "insufficient to put Defendants on notice of how each particular Accused Device is alleged to infringe the asserted claims" because "the 802.11n standard does not outline specific implementation details for compliant devices" and the plaintiff did not allege how "an 802.11n-compliant device would necessarily infringe." *Id*. at 708–09. Thus, compliance "with the requirements of Patent Rule 3–1" required explaining "how each Accused Product is asserted to infringe each claim limitation." *Id*. at 709.

Here, FCS's contentions frequently chart claim elements by copy-pasting block quotes from various standards without any explanation linking the block quote to the Accused Products.

*E.g.*, Ex. H at 18–23, 39–43; *see also Universal Connectivity*, 2025 WL 1144734, at *2 ("nowhere in Plaintiff's infringement contentions does Plaintiff demonstrate how each accused product . . . conforms to each accused standard"). This occurs throughout FCS's contentions. *See*, *e.g.*, Exs. A at 24–39; B at 5–9; C at 23–40; D at 5–11; E at 27–49; G at 11–22; I at 27–33; K at 21–41; L at 16–22. As a whole, these contentions fail "to identify with any level of detail how the Accused Products infringe the asserted claims." *Linex*, 628 F. Supp. 2d at 711. Instead, resting "on the vaguely articulated notion that networks which conform to . . . [802.11n or another] standard conform to the teachings of" the asserted patents, and "compliant products therefore necessarily infringe" these asserted patents. *Id.* at 708, 711. As in *Linex*, the relied-upon standards fail "to delineate details which are critical to an assertion or determination of infringement." *Id.* at 709. Thus, FCS fails to "demonstrate how each Accused Product conforms to the standard," or "identify where each limitation of each asserted claim is found within each Accused Product." *Id.* at 708.

### 3.    FCS Ignores Multiple Optional Implementations In The Standards

Finally, even if FCS's contentions had adequately linked the Accused Products to the referenced standards, which they do not (*see* § IV.B.1–2, *supra*)—"it is not uncommon for an industry standard to neglect to 'provide the level of specificity required to establish that practicing the standard would always result in infringement.'" *Hybrid Audio*, 2012 WL 12502182, at *3 (citation omitted); *see also id.* at *2 ("each accused product may not necessarily operate in the same way, regardless of whether all accused products comply with a particular industry standard"). When standards have multiple implementation techniques, contentions must demonstrate "that all the Accused Products use the same implementation technique—and that specific technique necessarily infringes" or that "different implementation techniques do not change its infringement theories such that . . . the theory of infringement is the same." *Secure Axcess*, 2016 WL 7042229, at *3; *see also Linex*, 628 F. Supp. 2d at 708 ("Plaintiff fails to take into account that the way in

which each Accused Product is alleged to infringe . . . will not necessarily be the same, even though all Accused Products are compliant with the 802.11n standard."). The court in *Secure Axcess* addressed infringement contentions that relied on an OpenFlow standard with "a variety of implementation techniques." 2016 WL 7042229, at *3. Therefore, plaintiff could not "rely on compliance with the standard alone to establish infringement" or provide notice under P.R. 3–1 because the accused products were not shown to use a specific implementation. *Id.* at *3, *5.

Like the OpenFlow standard in *Secure Axcess*, 802.11n and other wireless standards relied on in FCS's infringement contentions do not prescribe a single implementation technique. Indeed, as described in *Linex*, wireless standards like 802.11n are merely functional guidelines that do "not outline specific implementation details for compliant devices." 628 F. Supp. 2d at 711; *see also id*. at 708 ("the specific implementation of the hardware, software, and/or firmware configurations in 802.11n is left to the designer"). Indeed, 802.11n distinguishes between imperative mandatory requirements, permissive actions, and statements of possibility and capability. *See*, *e.g.*, Ex. S at 2. For example, MIMO (multiple-input, multiple-output) is just one "physical layer (PHY) configuration in which both transmitter and receiver use multiple antennas." *See* Ex. S at 16. In fact, all WiFi standard citations in the '153 patent contentions (Exs. G, H) are to one of "several [optional] methods of beamforming" (*i.e.*, implicit feedback beamforming) for this MIMO configuration. *See* Ex. G (citing Ex. S at 1727–1730); Ex. H (same); Ex. S at 1722 ("When the packet is transmitted using one of the (optional) beamforming techniques . . ."), 1727 ("There are several methods of beamforming . . ."). This is not isolated to the '153 patent; for example, contention charts for the '583 and '616 patents (Exs. A–D) purport to rely on a different VHT (Very High Throughput) implementation of the optional MIMO configuration. *E.g.*, Exs. A–D at 3. Meanwhile, FCS has not indicated whether its theory of infringement accuses only MIMO-

configured products, much less whether this theory is directed to the HT-LTF implementation of 802.11n (*see* Exs. K–L) or the VHT-LTF implementation of 802.11ac (*see* Exs. A–D). *See Secure Axcess*, 2016 WL 7042229, at *3 ("Secure Axcess has not demonstrated either that . . . different implementation techniques do not change its infringement theories such that even if Accused Products use different implementation techniques, the theory of infringement is the same.").

### C.    FCS Fails To Provide Any Clear Infringement Theory

#### 1.    FCS Relies On Screenshots, Block Quotes, And Parroted Language Without Linking To Product Features

Contention charts "must be clear as to what aspect of the accused products satisfies each key claim term . . . [and] cannot fill in the gaps with screenshots and parroted claim language." *Realtime Data, LLC v. Rackspace US, Inc.*, No. 6:16-CV-00961 RWS-JDL (lead case), 2017 WL 1927749, at *2 (E.D. Tex. May 10, 2017). For example, *Realtime Data* found that infringement contentions that parroted "claim language and paste[d] screenshots and block quotes . . . with no explanation of how the accused products satisfy the claim limitations" were deficient. *Id*. at *1–2. *Realtime Data* holds that contentions must "identify[] to the best of [plaintiff's] ability the portion of the accused product that satisfies" each element of each claim. *Id*. at *2 ("[Plaintiff] cannot fill in the gaps with screen shots and parroted claim language"); *see also Connectel*, 391 F. Supp. 2d at 528 (infringement contentions "simply mimicking the language of the claims when identifying infringement fail to comply with Patent Rule 3–1."). Similarly, *Rapid Completions v. Baker Hughes Inc.*, No. 6:15-CV-724, 2016 WL 3407688 (E.D. Tex. June 21, 2016), held infringement contentions with screenshots, block quotes, diagrams, pictures, and videos regarding accused instrumentalities with conclusory statements that merely parroted the claim language violated P.R. 3–1 for failing to provide notice of plaintiff's infringement theories, including how each accused instrumentality was alleged to meet each claim limitation. *Id.* at *6.

As a whole, FCS's contentions do not tie claim elements to any attributes of the Accused Products. Rather, for almost every asserted element, FCS's contentions comprise only a conclusory statement that a parroted claim element is present along with a collage of screenshots, block quotes, and copy-and-paste excerpts. Often, element-level contentions forgo citations to anything that references the Accused Products. For example, FCS's contentions simply parrot the first element of the '583 patent ("Defendant performs a step of determining pilot reference points . . .") as a conclusory statement that is followed only by excerpted block quotes. Ex. A at 24–28. None of these excerpts, which appear related to MIMO functionalities, refer to the Accused Products. Ex. A at 24–28. Indeed, nothing in the '583 chart indicates how any aspect of the Accused Products allegedly performs the excerpted MIMO functionalities or practices the parroted claim element. Rather, FCS's contention for this first '583 element "do[es] not refer in [its] text to a single structure, process, algorithm, feature or function of any accused product[, and] . . . provides no explanation of how [the] accused infringing products read on the asserted claim language." *Connectel*, 391 F. Supp. 2d at 528. Similar untethered elements occur throughout FCS's contentions. Exs. B at 5–6; C at 22–27; D at 4–5; G at 15–22; H at 18–22; I at 27–34; J at 29–32.

### 2. FCS's Contentions Are An "Unintelligible Maze" That Does Not Reveal A Discernible Infringement Theory

Most element-level contentions say nothing about the accused products; a few merely paste screenshots from marketing materials or FCC filings. But those images fail to explain FCS's theory of infringement (*e.g.*, how FCS contends the asserted claim element is practiced). Worse, FCS reuses the same product screenshots across multiple claims and patents without tying them to mapped elements. For example, the '845 patent contentions map "the step of a base station . . ." element of claim 1 by pasting 23 screenshots that never reference a base station or how any Accused Product is alleged to function as a "base station." Ex. J at 14–29; *see also Rapid*

*Completions*, 2016 WL 3407688, at *4 (finding that "diagrams must include specific identification of each element of each asserted claim"). Worse, these same 23 screenshots are copy-and-pasted for at least 25 other elements. *See generally* Ex. M (approximately 247 pages or 93% of the '053 chart consists of these same 23 screenshots); *see also* Exs. A, C, E, I, K, N (copy-pasting a different set of 13 screenshots at least 62 times for 62 different claim elements). In fact, FCS's proclivity for gap-filling with copy-and-pasted screenshots is demonstrated by the fact that the 23 base station screenshots are mapped to the conclusory contention that (potentially) entirely different products "comprise a second wireless transceiver." Ex. N at 31–51. More confusing, many of these screenshots annotate five to eight different wireless standards for each claim element, including 802.11 WiFi versions b, g, n, and ac; and Bluetooth, including versions 4.1, 4.2, and 5.0. *See, e.g.*, Ex. J at 14–27 (identifying 5 standards and Amazon Alexa for "a base station . . . ."); Ex. N at 31–51 (identifying 8 standards and Amazon Alexa for "a second wireless transceiver element . . . ."). This mess of parroted claim elements, copy-and-pasted screenshots, and excerpted block quotes renders FCS's infringement contentions "an unintelligible maze" that "make[s] it impossible for [Nextbase] to determine the theory of infringement with any certainty." *Traxcell Techs., LLC v. Huawei Techs. USA Inc.*, No. 2:17-CV-00042-RWS-RSP (lead), 2017 WL 6559256, at *4 (E.D. Tex. Dec. 21, 2017). Absent a cohesive infringement theory, FCS fails to comply with P.R. 3–1.

## V.    FCS'S INFRINGEMENT CONTENTIONS SHOULD BE STRICKEN OR SUPPLEMENTATION COMPELLED

The requirement of Patent Rule 3–1, that a plaintiff state its "preliminary infringement contentions shortly after the initial case management conference is specifically designed to require parties to crystalize their theories of the case, and to prevent a 'shifting sands' approach to patent litigation." *Motorola, Inc. v. Analog Devices, Inc.*, No. 1:03-CV-131, 2004 WL 5633735, at *1 (E.D. Tex. Apr. 8, 2004). To this end, plaintiffs are required to "rigorously analyze all publicly

available information before bringing suit and must explain with great detail their theories of infringement." *Connectel*, 391 F. Supp. 2d at 528 (E.D. Tex. 2005). "Specific theories create a specific trajectory for the case . . . [W]hen parties formulate, test, and crystallize their infringement theories before stating their preliminary infringement contentions . . . the case takes a clear path, focusing discovery . . . ." and narrowing issues for *Markman,* summary judgment, trial, and beyond. *Revolaze LLC v. J.C. Penney Corp., Inc.*, No. 2:19-CV-00043-JRG, 2020 WL 2220158, at *5 (E.D. Tex. May 6, 2020) (quoting *Connectel*, 391 F. Supp. 2d at 527). Thereby preventing cases from "stagger[ing] for months without clear direction." *Connectel*, 391 F. Supp. 2d at 527. This also avoids "'vexatious shuffling of positions' that the local patent rules were designed to avoid." *Motorola*, 2004 WL 5633735, at *1. Accordingly, this Court has emphasized that "[t]he purpose of P.R. 3–1 infringement contentions is to provide reasonable notice to an accused infringer . . . [that] allows the accused infringer to conduct its own discovery and prepare its defense." *Revolaze*, 2020 WL 2220158, at *3 (citations omitted). Additionally, *Universal Connectivity* holds that a plaintiff "must confirm whether the asserted patents are necessary or essential to any relevant standard." 2025 WL 1144734, at *3. If so, infringement contentions must "link each claim limitation to the particular standard." *Id.* FCS failed to do either.

"Deciding whether infringement contentions should be struck, is similar to deciding whether evidence should be excluded for discovery violations. It is also akin to deciding whether the pleading deadlines of a scheduling order should be extended." *Computer Acceleration Corp.*, 503 F. Supp. 2d at 822. Here, FCS has "attain[ed] important tactical advantages" and Nextbase has and will continue to be prejudiced by FCS's lack of disclosure, including a failure to disclose whether each asserted claim is essential to any of the wireless standards referenced in the infringement contentions. *Id*. at 821. For example, the parties are scheduled to exchange proposed

claim terms in less than a month and Nextbase should have the opportunity to select terms with knowledge of the specific theories under which its Accused Products are alleged to infringe. *See id.* at 823 ("The local patent rules were adopted . . . [to] provide both parties with the information required to litigate their case."). FCS has litigated each of these same patents in at least 42 lawsuits over the past five years; there is no excuse for refusing to confirm whether they are essential to the referenced wireless standards. Nor has FCS been diligent in seeking additional information about the Accused Products from third parties, if needed. There is no evidence that FCS ever obtained an Accused Product, much less performed any reverse engineering or other pre-suit analysis of Accused Products. *See Williams Wireless Techs., Inc. v. Rsch. in Motion Corp.*, No. 4:06CV305, 2007 WL 1932806, at *1 (E.D. Tex. May 31, 2007) (striking infringement contentions for products that "Plaintiffs did not perform the requisite pre-suit diligence"). Meanwhile, Nextbase requested specific "standards" theories in interrogatories served on May 14 and sent letters notifying FCS of contention deficiencies on July 31 and August 22. Deficient contentions have prejudiced Nextbase.

## VI.    <u>CONCLUSION</u>

FCS's infringement contentions fail to comply with P.R. 3–1 and should be stricken. Alternatively, FCS should be ordered to promptly provide (1) contentions that comply with P.R. 3–1 and (2) interrogatory responses clarifying any relationship of asserted claims to standards, *i.e.*, whether any claims or claim elements are essential to any standard and, if so, how each asserted claim element is necessarily practiced by any device that complies with the applicable standard.


September 23, 2025                            Respectfully submitted,

                                             /s/ *Scott E. Davis*
                                             Scott E. Davis
                                             Oregon State Bar No. 022883
                                             KLARQUIST SPARKMAN, LLP
                                             121 S.W. Salmon Street, Suite 1600

Portland, OR 97204
Telephone: (503) 595-5300
Fax: (503) 595-5301
Email: scott.davis@klarquist.com

Counsel for
Portable Multimedia LTD T/A Nextbase

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Local Rule CV-5(c), I hereby certify that on the 23rd day of September 2025, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record in this matter:

James Francis McDonough, III
Rozier Hardt McDonough PLLC
659 Auburn Ave. NE, Unit 254
Atlanta, GA 30312
Email: jim@rhmtrial.com

Jonathan Lloyd Hardt
Rozier Hardt McDonough PLLC
712 W. 14th St., Suite A
Austin, TX 78701
Email: hardt@rhmtrial.com

Carey Matthew Rozier
Rozier Hardt McDonough PLLC
2590 Walnut St., Ste. 10
Denver, CO 80205
Email: matt@rhmtrial.com

Service: service@rhmtrial.com

/s/*Scott E. Davis*
Scott E. Davis

## **CERTIFICATE OF CONFERENCE**

Counsel for both parties have complied with the meet and confer requirements of Local Rule CV-7(h). Specifically, lead counsel for Defendant, Scott Davis, met and conferred by telephone with lead counsel for Plaintiff, Jim McDonough, regarding the issues raised herein on September 10, 2025. During the meet-and-confer, the parties were unable to reach agreement, including because Plaintiff maintains its infringement contentions and interrogatory responses are sufficient and/or need not be supplemented at this time, which Defendant disputes. Therefore, at the conclusion of the meet-and-confer, the parties agreed that they had reached an impasse, leaving open one or more issues for this Court to resolve.

Plaintiff has indicated that it opposes this Motion.

/s/ *Scott E. Davis*
Scott E. Davis