**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| FLEET CONNECT SOLUTIONS LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>PORTABLE MULTIMEDIA LTD T/A NEXTBASE,<br><br>                    Defendant. | Civil Action No. 2:24-cv-01054-JRG-RSP<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE
PLAINTIFF'S INFRINGEMENT CONTENTIONS OR, IN THE ALTERNATIVE,
TO COMPEL PLAINTIFF TO COMPLY WITH PATENT RULE 3-1
AND SUPPLEMENT INTERROGATORY RESPONSES**

Plaintiff Fleet Connect Solutions LLC ("Fleet Connect" or "Plaintiff") respectfully submits this memorandum in opposition to the Motion to Strike Plaintiff's Infringement Contentions or, in the Alternative, to Compel Plaintiff to Comply with Patent Rule 3-1 and Supplement Interrogatory Responses (Dkt. 20; the "Motion") filed by Defendant Portable Multimedia Ltd T/A Nextbase ("Nextbase" or "Defendant") related to U.S. Patent Nos. 6,549,583 (the "'583 patent"), 6,633,616 (the "'616 patent"), 7,058,040 (the "'040 patent"), 7,260,153 (the "'153 patent"), 7,656,845 (the "'845 patent"), 7,742,388 (the "'388 patent"), and 8,005,053 (the "'053 patent") (collectively, the "Asserted Patents"). For the reasons set forth below, the Motion should be denied in its entirety.

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................................... 1

II.   FACTUAL BACKGROUND ....................................................................................... 2

    A.   PROCEDURAL HISTORY OF THIS ACTION ............................................. 2

    B.   FLEET CONNECT'S DILIGENCE IN SEEKING TECHNICAL DISCOVERY ..................... 2

    C.   NEXTBASE'S CRITIQUE OF FLEET CONNECT'S INFRINGEMENT CONTENTIONS IS A SCATTERSHOT (AND BELATED) DELAY TACTIC ..................... 4

III.  LEGAL STANDARD .................................................................................................. 5

IV.   ARGUMENT ............................................................................................................... 6

    A.   IDENTIFIED INDUSTRY STANDARDS ARE LINKED TO THE ACCUSED PRODUCTS ................................................................................................. 7

    B.   FLEET CONNECT DEMONSTRATES HOW THE RELEVANT INDUSTRY STANDARDS INFRINGE THE ASSERTED CLAIM LIMITATIONS ..................... 10

    C.   NEXTBASE'S REMAINING SCATTERSHOT ARGUMENTS ARE RED HERRINGS ......... 12

    D.   FLEET CONNECT'S INFRINGEMENT CONTENTIONS SHOULD NOT BE STRUCK AND SUPPLEMENTATION SHOULD NOT BE COMPELLED ......................................... 14

V.    CONCLUSION ......................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Blue Spike, Inc. v. Tex. Instruments, Inc.*, No. 6:12-cv-499, 2015 U.S. Dist. LEXIS 180412 (E.D. Tex. Jan. 12, 2015) ........................................................................ 14

*Computer Acceleration Corp. v. Microsoft Corp.*, 503 F.Supp.2d 819 (E.D. Tex. 2007) ....... 14, 15

*Elbit Sys. Land v. Hughes Network Sys., LLC*, No. 2:15-CV-00037-RWS-RSP, 2017 U.S. Dist. LEXIS 94495 (E.D. Tex. June 20, 2017) ...................................................... 11

*Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321 (Fed. Cir. 2010) ........................................... 7

*Linex Techs. Inc. v. Belkin Int'l, Inc.*, 628 F.Supp.2d 703 (E.D. Tex. 2008) .............................. 7, 9

*Presqriber, LLC v. AO Capital Partners LLC*, No. 6:14-CV-440, 2015 U.S. Dist. LEXIS 184515 (E.D. Tex. June 24, 2025) .................................................................... 5

*STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F.Supp.2d 754 (E.D. Tex. 2004) ................... 5, 15

*TruePosition, Inc. v. Andrew Corp.*, 507 F.Supp.2d 447 (D. Del. 2007) ..................................... 11

*Universal Connectivity Techs. Inc. v. Lenovo Grp. Ltd.*, No. 2:23-CV-00449-JRG, 2025 U.S. Dist. LEXIS 75085 (E.D. Tex. Apr. 15, 2025) .................................................. 6

*Whipstock Servs. v. Schlumberger Oilfield Servs.*, No. 6:09-cv-113, 2010 U.S. Dist. LEXIS 1395 (E.D. Tex. Jan. 8, 2010) ................................................................... 15

## Other Authorities

3GPP TS 36.213 Version 10.0.0 Release 10; Evolved Universal Terrestrial Radio Access (E-UTRA); Physical layer procedures (*available at* https://www.3gpp.org/ftp/Specs/archive/36_series/36.213/ 36213-a00.zip) ......................... 14

3GPP TS 36.213 Version 11.0.0 Release 11; Evolved Universal Terrestrial Radio Access (E-UTRA); Physical layer procedures (*available at* https://www.3gpp.org/ftp/Specs/archive/36_series/36.213/36213-b00.zip) ......................... 14

3GPP TS 36.300, Version 11.4.0 (*available at* https://www.3gpp.org/ftp/Specs/archive/36_series/36.300/36300-b40.zip) ......................... 14

3GPP TS 36.300, Version 12.10.0 (*available at* https://www.3gpp.org/ftp/Specs/archive/36_series/36.300/36300-ca0.zip) ......................... 14

IEEE SA Quick Reference Guide: Standards Development Process, *available at:* https://standards.ieee.org/wp-content/uploads/import/documents/other/ieee_sa_toolkit.pdf ................................................. 8

Rohde & Schwarz's "UMTS Long Term Evolution (LTE) – Technology Introduction" (July 2012), *available at* https://scdn.rohde-schwarz.com/ur/pws/dl_downloads/dl_application/application_notes/1ma111/1MA1 11_4E_LTE_technology_introduction.pdf ......................................................................... 13

**<u>Rules</u>**

Patent Rule 3-1 .......................................................................................................... 2, 5, 7, 14

Patent Rule 3-6(b) ............................................................................................................. 15

## I.  **INTRODUCTION**

More than six months after receiving Fleet Connect's Preliminary Infringement Contentions—served on March 12, 2025 (the "Infringement Contentions")—Nextbase belatedly seeks to challenge them for allegedly failing to provide enough information for Nextbase to understand the factual bases for Fleet Connect's case.  This is a farce—Nextbase knows exactly what Fleet Connect is alleging and is simply seeking to avoid upcoming claim construction deadlines.  *See* Docket Control Order (Dkt. 18).  Despite responding to discovery that explicitly relied on the Infringement Contentions back in April of 2025—and saying that it did not have any of the information on the wireless functionality accused—Nextbase never claimed that it did not understand the contentions against it.  In fact, Nextbase does not even try to hide this—it ___**admits**___ that it is using the Motion as a means to delay claim construction.  Motion at 14-15.

There are seven patents asserted in this case, each of which are directed to and claim methods of wireless communication.  For each of these patents, Fleet Connect's Infringement Contentions (1) identify the specific types of hardware devices (Dash Cams and Window Cams) provided by Defendant; (2) identify the specific communications protocols implemented by those devices based on public information; and (3) provide detailed charts explaining, on a limitation-by-limitation basis, how and why products that implement those specific communications protocols necessarily practice the applicable asserted claim limitations.

After serving discovery, taking a deposition, and meeting and conferring with Nextbase, it is clear that Nextbase alleges that it does not have the technical information concerning the relevant wireless functionality of the Accused Products.  Since discovering this, Fleet Connect has been diligently seeking the relevant information from third parties.  However, it has not yet received the documents it is seeking.  For that reason, even if the contentions were deficient (and they are not), it is premature to require Fleet Connect to revise them.  The Motion should be denied.

## II.  FACTUAL BACKGROUND

### A.  PROCEDURAL HISTORY OF THIS ACTION

Fleet Connect sued Nextbase in December 2024, alleging that Nextbase's manufacture and sale of certain Dash Cams, Window Cams, and related technologies (the "Accused Products") infringes the seven Asserted Patents.  *See* Dkt. 1 at ¶¶ 1, 16. Detailed infringement charts were attached to the Complaint. Dkts. 1-1 to 1-7.  Fleet Connect served its Infringement Contentions in compliance with Patent Rule 3-1 on March 12, 2025, more than six months ago.  *See Fleet Connect Solutions LLC v. Alan Ritchey Inc.*, No. 2:24-cv-00879-JRG-RSP (E.D. Tex.) at Dkt. 28 (Notice of Compliance with P.R. 3-1 and 3-2).  Although a Docket Control Order was entered on May 12, 2025 (Dkt. 18), this case remains relatively early in the discovery process.  In particular, while discovery is underway, Nextbase has claimed that it does not have any of the relevant technical documentation regarding the Accused Products (and one deposition has been taken to confirm this).  Fleet Connect has subpoenaed two of four relevant third-party manufacturers, and the other two require a letter of request/letter rogatory to be issued (by motion), which will be filed soon.  Discovery is not scheduled to close until March 20, 2026, more than five months from now.  *Id.* at 4.  Claim construction has not yet occurred, but on October 16, 2025, the Parties will exchange proposed claim terms.  *Id.* at 5.  The Markman is set for February 2026.  *Id.* at 4.

### B.  FLEET CONNECT'S DILIGENCE IN SEEKING TECHNICAL DISCOVERY

Fleet Connect served its First Set of Interrogatories (Nos. 1-16) on Nextbase on March 27, 2025.  *See* **Exhibit 1**.  Nextbase served responses and objections on May 14, 2025, and it served supplemental responses and objections on May 30, 2025.  *See* **Exhibit 2**.  Fleet Connect's Interrogatory Nos. 5 and 6 request information on third parties that contribute to the provision of the Accused Products to end users/customers and the five individual persons with the most knowledge of the design, development, testing, operation, function, operation of the same.  *See*

**Ex. 1** at 10.  In response to both Interrogatories, Nextbase listed an advisor to the Nextbase Chief Executive Officer, the Director of Engineering at Nextbase, the Vice President of Commercial Operations for the U.S. Nextbase entity, Ampak Technology Inc. ("Ampak"), and Shenzhen Samoon Technology Co., Ltd. ("Shenzhen").  **Ex. 2** at 13-14, 16.  Fleet Connect's Interrogatory No. 13 asks Nextbase to identify all documents describing how to use and operate the Accused Products (**Ex. 1** at 15); however, none of the handful of documents that Nextbase identified pursuant to Rule 33(d) in its supplemental response disclosed anything more than what was already publicly available.  **Ex. 2** at 36.  In addition, based on a review of the documents produced by Nextbase in this action, Fleet Connect identified two domestic manufacturers of components for Accused Products that may have relevant technical documentation: Omnivision Technologies, Inc. ("Omnivision") and Ambarella International LP ("Ambarella").

On June 24, 2025, Fleet Connect was finally able to schedule a deposition of Nextbase employee Steven Smith to gain further information on third-party manufacturers, among other information.  On June 29, 2025, Fleet Connect requested access to any relevant source code to which Nextbase had access, which had also been requested in Fleet Connect's RFPs.  *See* **Exhibit 3** at 1-2 (Email from K. Matuszewski, dated July 29, 2025).  In response, Nextbase confirmed it had no relevant source code.  *Id.* at 1.  Fleet Connect thereafter issued subpoenas to testify and produce documents to both Omnivision and Ambarella on August 26, 2025.  *See* **Exhibit 4**; **Exhibit 5**. Omnivision was served on September 2, 2025, but has so far ignored the subpoena.  Fleet Connect recently reached Omnivision, which agreed to meet and confer.  Due to difficulties with service, Ambarella was not served until October 3, 2025.  **Exhibit 6**.

On August 26, 2025, Fleet Connect notified Nextbase that it needed to move this Court for the issuance of a letter rogatory for Ampak (based in Taiwan) and letter request for Shenzhen (based in China), and it asked Nextbase whether it would oppose such a request.  **Exhibit 7** at 5-

6.  Nextbase initially refused to provide an answer without reviewing the actual requests that Fleet Connect intended to pursue, but even once Fleet Connect gave those requests to Nextbase, it indicated that it would likely oppose Fleet Connect's attempt to get evidence from the very same companies that Nextbase says has the technical information. *Id.* at 1-5; *see also* Ex. 2 at 14, 16.

### C.   Nextbase's Critique Of Fleet Connect's Infringement Contentions Is A Scattershot (And Belated) Delay Tactic

As shown in Fleet Connect's Infringement Contentions, the steps of each of the asserted method claims are taken by Nextbase—the Accused Products are preprogrammed to automatically perform the methods—and its employees/customers, and the Accused Products practice each limitation of the asserted apparatus claims.  *See* Dkts. 20-2 to 20-15.  As a reminder, at the time the Infringement Contentions were served, Nextbase had not produced any documents in this action, so the only technical information Fleet Connect had regarding the Accused Products was that which was publicly available.  Since then, Nextbase has made three separate document productions totaling over 98,000 pages in response to Fleet Connect's identification of document categories that are relevant to this case.  **Exhibit 8**.  However, none of the documents produced disclose non-public technical details (besides their use of certain standards) regarding how the wireless signals are received, modulated, or transmitted in the Accused Products.  When Fleet Connect is able to obtain this information (through the third parties identified above), it intends to update the Infringement Contentions (and any other related discovery) as necessary.  But, until new information regarding the technical details of the Accused Products is made available to Fleet Connect, it has no new information for the contentions.

Finally, it is important to note that Fleet Connect's identified document categories (**Ex. 8**) and First Set of Interrogatories (**Ex. 1**), were both served in March and both request technical documents and information, including information on non-infringement positions, with direct

reference to the Infringement Contentions.[1]  Other than stating that the contentions were "not based on information specific to how any Accused Product actually functions," Nextbase did not provide any explanation as to why it did not understand the theories of infringement.  **Ex. 1** at 30; *see also* **Exhibit 9**.  Nor did Nextbase move to strike or Fleet Connect's Infringement Contentions.  Instead, it stated that "[a]s Nextbase understands Plaintiff's Infringement Contentions and the technology Plaintiff accused of infringing Asserted Patents, Nextbase does not have possession, custody or control of information sufficient to provide a complete response."  **Ex. 1** at 30.

## III.  <u>LEGAL STANDARD</u>

Patent Rule 3-1 "requires a party asserting infringement to serve infringement contentions 'set[ting] forth specific theories of infringement at the outset of the case.'"  *Presqriber, LLC v. AO Capital Partners LLC*, No. 6:14-CV-440, 2015 U.S. Dist. LEXIS 184515, at *4 (E.D. Tex. June 24, 2025) (citation omitted).  Patent Rule 3-1 further requires that the patent owner "set[] forth particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patent rules themselves."  *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F.Supp.2d 754, 755 (E.D. Tex. 2004) (citation omitted).  Preliminary infringement contentions "are not meant to provide a forum for litigation of substantive issues; they are merely designed to streamline the discovery process."  *Id.*  "Notice is the core function of P.R. 3-1 contentions and although they 'must be reasonably precise and detailed . . . they need not meet the level of detail required, for example, on a motion for summary judgment on the issue of infringement.'"  *Presqriber*, 2015 U.S. Dist. LEXIS 184515, at *5.

"The Court generally disfavors striking infringement contentions 'absent evidence of unreasonable delay and prejudice.'"  *Universal Connectivity Techs. Inc. v. Lenovo Grp. Ltd.*, No.

---

[1]    Specifically, the defined terms "Asserted Claims," "Asserted Patents," and "Accused Products" all refer to "Plaintiff's Local Patent Rule 3-1 and 3-2 Disclosures, served in this case on March 12, 2025."  <u>Ex. 1</u> at 2, 9-17; <u>Ex. 8</u> at 1-4, 6-7.

2:23-CV-00449-JRG, 2025 U.S. Dist. LEXIS 75085, at *4 (E.D. Tex. Apr. 15, 2025) (Gilstrap, J.) (citation omitted). "A motion to strike is not a shortcut to summary judgment of non-infringement for the defendant." *Id.* "Whether the defendant believes that the plaintiff's infringement contentions express a 'viable infringement theory is of no moment.'" *Id.* (citation omitted).

## IV. <u>ARGUMENT</u>

One of the main themes of Nextbase's Motion is that, in its view, Fleet Connect's infringement contentions are deficient because Fleet Connect has not, at this stage of the case, taken the position that the Asserted Patents are standards essential. In moving to strike, Nextbase relies heavily on *Universal Connectivity* to demand the Court strike or compel supplementation of the Infringement Contentions and Fleet Connect's interrogatory responses concerning whether the Asserted Patents are essential to any standards. Nextbase essentially argues that if Fleet Connect does not assert that the Asserted Patents are standards essential it must dismiss this case. But that was not the holding of *Universal Connectivity*. That case had been pending over a year and a half and there were only two months remaining before the close of fact discovery. That posture was the basis of the Court's decision: "***<u>While Plaintiff need not affirmatively state that the asserted patents are necessary or essential at the outset of the case</u>***, this case is not in the beginning stages anymore. Plaintiff filed this case over a year and a half ago and fact discovery closes in less than two months." 2025 U.S. Dist. LEXIS 75085, at *7-8 (emphasis added). At this time, Fleet Connect does not necessarily disagree that supplementation may be required before the close of fact discovery, but, procedurally, this is not the time. Discovery opened in March 2025 and does not close until March 2026. Fleet Connect has reviewed Nextbase's document production, deposed one witness, tried to get source code, served subpoenas on two of Nextbase's third party

manufacturers, and is preparing a letter of request and letter rogatory for two international ones.[2]

Setting that aside, it is important to note that Fleet Connect has **_not_** relied solely on the use of an industry standard to inform Nextbase of its infringement theories.  Rather, Fleet Connect has methodically compared exemplary Accused Products to required portions of industry standards and then compared those industry standard requirements to the claim limitations of the Asserted Patents. As explained in more detail below, Fleet Connect has also relied on industry-recommended practices for the coexistence of wireless local area networks (*e.g.*, Wi-Fi) and wireless personal area networks (*e.g.*, Bluetooth).  The contentions cite the portion of standards or practices that the Accused Products are more likely than not to practice (whether a recommended practice, a withdrawn recommendation, or an optional portion).  This is more than sufficient.

### A. IDENTIFIED INDUSTRY STANDARDS ARE LINKED TO THE ACCUSED PRODUCTS

Nextbase argues that Claim Charts F, I, J, M, and N "fail to identify any particular standard, must less link asserted claim elements to any required standard provisions" and that the Infringement Contentions generally fail to link any Accused Products to any identified standards Motion at 4-7.  These statements are untrue—the Infringement Contentions specifically link the elements of the asserted claims to the standards used by the Accused Products and further identify recommended practices and optional portions that most companies employ in similar products.

The crux of Nextbase's misunderstanding is its belief that only a single standard can apply

---

[2]  The reality is that "the use of an industry standard as the basis for infringement contentions is permissible, and in certain cases may even by sufficient to put a defendant on notice of the plaintiff's assertions of infringement."  *Linex Techs. Inc. v. Belkin Int'l, Inc.*, 628 F.Supp.2d 703, 709 (E.D. Tex. 2008).  Of course, there are instances, where "an industry standard does not provide the level of specificity required to establish that practicing that standard would always result in infringement." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010).  The key is that the patent owner must either "identify where each limitation of each asserted claim is found within each Accused Product" or "demonstrate how each Accused Product conforms to the standard." *Linex*, 628 F.Supp.2d at 707-708; *see also id.* at 708 ("Linking each Accused Product--or even exemplary Accused Products--to the draft standard would add the information and specificity needed to comply with the requirements of Patent Rule 3-1.").

to an Accused Product. Motion at 4-5. That is wrong. Multiple industry standards may be applicable, and a patent owner is not limited to identifying only one industry standard in its preliminary infringement contentions when there may be multiple invoked by the claim language. For example, here, the Accused Products are capable of operating over cellular, Wi-Fi (including, specifically 2.4G Wi-Fi), and/or Bluetooth networks, and the first few pages of each of the claim charts identifies each of these as accused functionalities. *See, e.g.*, Ex. F (Dkt. 20-7) at 2-3, 6; Ex. I (Dkt. 20-10) at 5; Ex. J (Dkt. 20-11) at 2; Ex. M (Dkt. 20-14) at 2; Ex. N (Dkt. 20-15) at 4. Further, because the 2.4G Wi-Fi and Bluetooth functionalities of the Accused Products operate over roughly the same frequency—*see, e.g.,* Ex. F (Dkt. 20-7) at 6 (Bluetooth operating at 2402 MHz – 2590 MHz and 2.4G Wi-Fi operating at 2412 MHz – 2462 MHz); Ex. I (Dkt. 20-10) at 5 (Bluetooth operating at 2400 MHz – 2483.5 MHz and 2.4G Wi-Fi operating at 2412 MHz – 2462 MHz)—the Accused Products must also employ a protocol that governs the interoperability between the 2.4G Wi-Fi and Bluetooth functionalities. One such protocol is embodied in IEEE 802.15.2. While it is officially labeled a "Recommended Practice" rather than a "technical specification," IEEE 802.15.2 nonetheless represents the approach that most in the industry would have adopted to facilitate the interoperability of devices since Recommended Practices represent the "procedures and positions preferred by the IEEE."[3] Without having access to non-public technical documents, Fleet Connect can reasonably allege that the Accused Products likely adopted the procedures and processes described in IEEE 802.15.2. Any arguments to the contrary by Nextbase are non-infringement arguments that are not the proper basis for a motion to strike.[4]

---

[3]     *See* IEEE SA Quick Reference Guide: Standards Development Process at 5, *available at:* https://standards.ieee.org/wp-content/uploads/import/documents/other/ieee_sa_toolkit.pdf.

[4]     Nextbase also complains that IEEE 802.15.2-2003 "does not represent modern approaches to WiFi/Bluetooth coexistence" because it was withdrawn and, therefore, should not be presumed to apply to the Accused Products. Motion, at 5. What Nextbase fails to disclose, however, is that the specific Recommended Practice cited by Fleet Connect was published in 2003 and was not

*Linex*, 628 F.Supp.2d at 713 ("Infringement Contentions are not intended to be a forum for adjudicating the merits of the plaintiff's contentions.") (citation omitted).

Nextbase also tries to allege that the Infringement Contentions "do not tie claim elements to any attributes of the Accused Products" based on a myopic analysis of each claim element in isolation. Motion at 12. For example, Nextbase claims that the "contentions simply parrot the first element of the '583 patent" and "nothing in the '583 chart indicates how any aspect of the Accused Products allegedly performs the excerpted MIMO functionalities." *Id.* (citing Ex. A at 24-28). It is true that no Nextbase documentation was cited in support of claim element 1[a] of the '583 patent. *See* Ex. A (Dkt. 20-2) at 24-28. However, Fleet Connect cites IEEE 802.11ac-2013, ETSI TS 136 201 V10.0 (2011-01), ETSI TS 136 211 V10.1.0 (2011-04), and some third-party publications explaining these standards and how they are traditionally implemented in practice (and Fleet Connect alleges the Accused Products do it this way). *Id.* And Fleet Connect clearly linked the Accused Products to IEEE 802.11ac and ETSI TS 136 101 *et. seq.* with publicly available documentation in the preamble of claim 1. *See, e.g., id.* at 6, 15-16, 24. Furthermore, MIMO is a requirement of 802.11ac, so merely being able to comply with that standard means that the Accused Products are configured for MIMO. Nextbase's other alleged "untethered elements" are likewise grounded in publicly available documentation cited during discussion of one or more other claim limitations. *See, e.g.,* Motion at 9 (citing Ex. H at 18-23, 39-43, while ignoring that the chart ties the Accused Products to 802.11n (*see, e.g.*, Ex. H at 25)).

---

withdrawn until 2018. While the Recommended Practice is no longer encouraged for new implementations, pre-existing implementations that use it are still in use today. Certain of the Accused Products were designed prior to 2018, making it more likely than not that they complied with 802.15.2-2003. Nextbase would likely not have redesigned its products to ***not*** comply with this Recommended Practice simply because it was withdrawn.

**B.**  **FLEET CONNECT DEMONSTRATES HOW THE RELEVANT INDUSTRY STANDARDS INFRINGE THE ASSERTED CLAIM LIMITATIONS**

Nextbase's claim that Fleet Connect has failed to tie the identified industry standards with the asserted claim limitations appears to stem from a lack of understanding of the Asserted Patents and the standards themselves. To begin with, Nextbase does not understand that, for a majority of the Asserted Patents, the exact cellular, Wi-Fi, or Bluetooth standard applicable to the Accused Products is actually irrelevant. For example, claim element 1[a] of the '845 patent recites:

> a base station allocating at least one of a plurality of data channels to a first medium for data transmission via a wireless device; the base station allocating at least one remaining data channel of the plurality of data channels to a second medium for data transmission via the wireless device; and

Ex. J (Dkt. 20-11) at 14-15. This claim limitation does not require a particular communications standard to be used; rather it only addresses the interoperability between two different media for data transmission. The citations to Nextbase's documentation demonstrate that the Accused Products are wireless devices that use at least two mediums for data transmission: Wi-Fi and Bluetooth. *Id.* at 15. Given that these means of data transmission operate over the same frequency band, an interoperability protocol such as IEEE 802.15.2-2003 is necessarily invoked.[5] *See id.* at 28-29. IEEE 802.15.2-2003 specifically calls for allocating a time-slot channel to the first medium (in this case, the 2.4G Wi-Fi) for data transmission and a different time-slot channel to the second medium (in this case, Bluetooth) for data transmission. *Id.* This, in turn, satisfies claim limitation.

Similarly, the particular cellular or Wi-Fi standard employed by an Accused Product is irrelevant to claim element 1[d] of the '053 patent, which requires that "the apparatus is configured

---

[5]    The same is true for all of specific instances where Nextbase has claimed that Fleet Connect failed to identify a particular standard for each claim limitation. *See* Motion at 4-5. The irrelevance of the particular Wi-Fi or Bluetooth standard for certain Asserted Patents also explains why the same screenshots are reused across the Infringement Contentions. *Id.* at 12-13. That is, the screenshots are used to demonstrate that the Accused Products have cellular, Wi-Fi, and/or Bluetooth functionality generally and, in some circumstances, to show which standards Nextbase has deemed the Accused Products to comply with.

to encode data of the wireless protocol for the unselected transceiver into data of the wireless protocol for the selected transceiver." Ex. N (Dkt. 20-15) at 75. Many the citations in the Infringement Contentions are used simply to demonstrate that cellular and Wi-Fi functionalities co-exist in the Accused Products. *Id.* at 75-92. The cited 3GPP Technical Report standard then shows that when the Accused Products transmit data using the Wi-Fi transceiver (*i.e.*, the selected transceiver), the Accused Products encode the data of the cellular transceiver (*i.e.*, the unselected transceiver) into data of the Wi-Fi transceiver, which satisfies the claim limitation.[6] *Id.* at 92.

Nextbase also seems to misunderstand many of the cited industry standards themselves. For example, Nextbase complains that the Infringement Contentions "often" excerpt a figure or text from an applicable standard "without any explanation tying the claim element to the standard excerpt." Motion at 7. There is no requirement, however, that Fleet Connect further explain excerpts that are clear on their face to one in the art regarding how the claim limitation is satisfied. *See Elbit Sys. Land v. Hughes Network Sys., LLC*, No. 2:15-CV-00037-RWS-RSP, 2017 U.S. Dist. LEXIS 94495, at *39 (E.D. Tex. June 20, 2017) (Defendant's "argument is simply that more detail or explanation should have been included, but 'the preparation and supplementation of infringement contentions is a matter of pleading and merely notifies a defendant of the asserted theories of infringement in order to provide adequate notice and streamline discovery.'") (citation omitted). And Fleet Connect's citations to the standards are exactly that—evident on their face how they apply to the claim limitation for which they are cited. For example, in the contention

---

[6]    Nextbase alleges that the citations to the 3GPP Technical Report should be ignored because it is an "entirely informative" document, not a "standard." Motion at 5 n.4 (citing ETSI websites). This misses the point. The purpose of 3GPP Technical Reports is to help explain the adopted Technical Specifications, and at least one court has referred to the Technical Specifications and the Technical Reports generated by 3GPP together as the "standards" generated by that organization. *See TruePosition, Inc. v. Andrew Corp.*, 507 F.Supp.2d 447, 453 (D. Del. 2007) ("3GPP prepares, approves and maintains 'Technical Specifications' and 'Technical Reports' (known generally as 'standards') for various cellular telephone systems.").

chart for the '616 patent, Fleet Connect shows that the Accused Products comply with IEEE 802.11ac. Ex. D (Dkt. 20-5) at 4. The excerpted image from 802.11ac would demonstrate to one skilled in that art that there are two parallel paths (*id.* at 10) and, therefore, depicts everything that is needed to know that this claim limitation is satisfied. Nextbase's other claimed "defects" are similarly misplaced. Motion at 7.

Finally, Nextbase's argument regarding the optionality within certain of the industry standards relied upon by Fleet Connect is misplaced. For instance, Nextbase impermissibly conflates the ideas of MIMO, beamforming, HT-LTF, and VHT-LTF, which are four distinct concepts. Motion at 10-11. MIMO is a required feature of the 802.11n standard, not an optional one as claimed by Nextbase. *Id.* Thus, if the Accused Products indicate that they are compliant with 802.11n, they are necessarily configured for MIMO. Beamforming, on the other hand, is an optional feature under 802.11n, and whether the Accused Products are capable of engaging beamforming is information that Fleet Connect does not have and will not have without the provision of technical documents and/or source code by Nextbase or its third-party vendors. Nonetheless, given the prevalence of beamforming in the industry, it is highly likely that the chipsets employed in the Accused Products have the option enabled. HT-LTF and VHT-LTF are not configurations of MIMO or methods of beamforming, but training signals used in the beamforming process and are used to perform channel estimation. Alleging the presence of one or more of these configurations/methods in the Accused Products does not exclude the presence of any others. Put simply, Nextbase is on notice of its infringement allegations regarding beamforming, MIMO, HT-LTF and VHT-LTF.

## C. NEXTBASE'S REMAINING SCATTERSHOT ARGUMENTS ARE RED HERRINGS[7]

Fleet Connect's occasional reliance on third-party publications to help explain complicated

---

[7]    Nextbase never met and conferred with Fleet Connect regarding the issues in this section

industry standards or portions thereof (and how they are they are applied in practice) does not diminish its otherwise detailed explanation of its infringement theories, which use direct evidence, citations to standards/recommended practices, and logical conclusions based on the foregoing in light of public information.[8]  *See* Motion at 5-6.  These citations to "third party sources" simply provide further explanation of the standards/technologies covered by the standards, which support Fleet Connect's infringement theories.  *See, e.g.,* Ex. A (Dkt. 20-2) at 27.  The inclusion of such examples does not negate the fact that the standards themselves—here, IEEE 802.11ac for Wi-Fi or ETSI TS 136 201 V10.0 for cellular—are also cited and show infringement.  *See id.* at 24-27.

Neither are Fleet Connect's citations to the standards inconsistent as Nextbase claims.  *See* Motion at 6-7 (claiming that Fleet Connect cites "multiple LTE versions" of the ETSI Technical Specifications for four of the Asserted Patents).  Again, Nextbase's argument appears to stem from a fundamental misunderstanding of the applicable standards.  While the ETSI and 3GPP technical specifications/technical reports are each designed to comprise a collection of standards covering specific functional areas of the LTE system, each individual standard within the two sets of specifications/reports is updated independently and has its own revision history.  Cellular operators are free to decide which version of any particular standard they will use, and there is no requirement that every adopted standard be at the same Revision (*i.e.*, version) level.  Thus, Fleet Connect's citations to Version 8.3.0 of ETSI TS 103 104 (*see, e.g.,* Ex. A (Dkt. 20-2) at 15),

---

prior to filing the Motion.  If it had, Fleet Connect might have tried to address Nextbase's concerns regarding these portions of the charts.  This alone warrants denial of these aspects of the Motion.

[8]     The citation on page 16 of Ex. E (Dkt. 20-6) and page 23 of Ex. I (Dkt. 20-10) has apparently changed since the Infringement Contentions were served, since the figure copied in the Infringement Contentions is not found at the current link.  *See* Ex. T (Dkt. 20-21).  The same information, however, is available on page 16 of Rohde & Schwarz's "UMTS Long Term Evolution (LTE) – Technology Introduction" (July 2012), *available at* https://scdn.rohde-schwarz.com/ur/pws/dl_downloads/dl_application/application_notes/1ma111/1MA111_4E_LTE_technology_introduction.pdf.  Fleet Connect apologizes for any resultant inconvenience.

Version 10.12 of ETSI TS 136 141 (*see, e.g., id.* at 14), and Version 10.1.0 of ETSI TS 136 211 (*see, e.g., id.* at 27), for example, do not show conflict or incompatibility; similarly, there are no inconsistent version citations in the charts for the '583 patent or the '616 patent.[9]  In any event, none of the other similar issues raised by Nextbase warrant the contentions being struck.

### D.  FLEET CONNECT'S INFRINGEMENT CONTENTIONS SHOULD NOT BE STRUCK AND SUPPLEMENTATION SHOULD NOT BE COMPELLED

As explained above, the Infringement Contentions comply with Patent Rule 3-1 and, therefore, should not be struck.  *Blue Spike, Inc. v. Tex. Instruments, Inc.*, No. 6:12-cv-499, 2015 U.S. Dist. LEXIS 180412, at *7 (E.D. Tex. Jan. 12, 2015) (denying motion to strike because contentions complied with Patent Rule 3-1).  But even if they did not comply, they should still not be struck.  "Striking infringement contentions is a drastic decision 'similar to deciding whether evidence should be excluded for discovery violations.'"  *Id.* at *5-6 (citing *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F.Supp.2d 819, 822 (E.D. Tex. 2007)).  Thus, "courts are hesitant to strike contentions absent evidence of unreasonable delay and prejudice."  *Id.* at *6 (citing

---

[9]    Upon review of the contention chart for the '153 patent, it does appear that Fleet Connect erroneously cited two different versions of 3GPP TS 36.213. This error, however, is harmless; all the information cited by Fleet Connect is identical or nearly identical in both the versions. *Compare* Ex. G (Dkt. 20-8) at 12 (Version 10), 19 (Version 11), 45 (Version 10) *with* 3GPP TS 36.213 Version 10.0.0 Release 10; Evolved Universal Terrestrial Radio Access (E-UTRA); Physical layer procedures (*available at* https://www.3gpp.org/ftp/Specs/archive/36_series/36.213/ 36213-a00.zip) at pp. 41, 58 *or* 3GPP TS 36.213 Version 11.0.0 Release 11; Evolved Universal Terrestrial Radio Access (E-UTRA); Physical layer procedures (*available at* https://www.3gpp.org/ftp/Specs/archive/36_series/36.213/36213-b00.zip) at p. 33.

Similarly, Fleet Connect cites two versions of 3GPP TS 36.300 (Version 11.4.0 and Version 12.10.0) in support of the same claim limitations in the contention chart for the '053 patent. *See, e.g.,* Ex. N (Dkt. 20-15) at 62-64. While both versions demonstrate the same information, the older version is merely less specific about what happens in the case of interference. *Compare* Section 23.4.2 of 3GPP TS 36.300, Version 11.4.0 (*available at* https://www.3gpp.org/ftp/ Specs/archive/36_series/36.300/36300-b40.zip) *with* Section 23.4.2 of 3GPP TS 36.300, Version 12.10.0 (*available at* https://www.3gpp.org/ftp/Specs/archive/36_series/36.300/36300-ca0.zip). The additional specificity, however, is immaterial to the claim limitation at issue.

*Computer Acceleration*, 503 F.Supp.2d at 822).  Fleet Connect has not delayed, and Nextbase would not be prejudiced if Fleet Connect was permitted the opportunity to remedy any deficiency.

On the other hand, it would be difficult at this stage for Fleet Connect to amend its Infringement Contentions since Nextbase has not produced any technical discovery and has obstructed Fleet Connect's attempts to obtain such discovery from its international vendors. Nextbase has also been unhelpful in obtaining the cooperation of one of its American vendors, and Fleet Connect has faced difficulty serving Nextbase's other American vendor.  Nonetheless, Fleet Connect continues in its efforts to obtain the necessary technical information from third parties, and it intends to amend the Infringement Contentions upon discovering any technical information relevant to its infringement theories.  *See* Patent Rule 3-6(b).  Since Nextbase claims not to have relevant information (and will not assist in getting it), Fleet Connect respectfully requests that the Court decline to order Fleet Connect to amend the Infringement Contentions at this time.[10]

Finally, and contrary to Nextbase's repeated insinuations, given the available information on the products, Fleet Connect had no obligation to reverse engineer the Accused Products, which is a proposition that has been long rejected.  *STMicroelectronics*, 308 F.Supp.2d at 755 ("The question of whether [the disclosing party] conducted 'reverse engineering or its equivalent' is not synonymous with whether it has complied with Patent [Rule] 3-1, which, as discussed, requires only to set forth specific theories of infringement.").

### V.    CONCLUSION

For the reasons set forth above, the Motion should be denied in its entirety.

---

[10]    *See Whipstock Servs. v. Schlumberger Oilfield Servs.*, No. 6:09-cv-113, 2010 U.S. Dist. LEXIS 1395, at *6-7 (E.D. Tex. Jan. 8, 2010) ("At the outset of a case, infringement contentions need only be based on information that is publicly available.  If more specific information becomes available through discovery, additional specificity in the infringement contentions may be appropriate to provide adequate notice of the accused processes or methods.  Plaintiff should update and refine its contentions as necessary.  Accordingly, the Court finds it unnecessary to strike Plaintiff's infringement contentions or to compel Plaintiff to amend them at this time.").

Dated: <u>October 8, 2025</u>                    Respectfully submitted,

                                                By: <u>*/s/ James F. McDonough, III*</u>

                                                James F. McDonough, III (GA 117088)*
                                                **ROZIER HARDT MCDONOUGH PLLC**
                                                659 Auburn Avenue NE, Unit 254
                                                Atlanta, Georgia 30312
                                                Telephone: (404) 564-18662
                                                Email: jim@rhmtrial.com

                                                Jonathan Hardt (TX 24039906)*
                                                **ROZIER HARDT MCDONOUGH PLLC**
                                                712 W. 14th Street, Suite A
                                                Austin, Texas 78701
                                                Telephone: (210) 289-7541
                                                Email: hardt@rhmtrial.com

                                                C. Matthew Rozier (CO 46854)*
                                                **ROZIER HARDT MCDONOUGH PLLC**
                                                1001 Bannock Street, Suite 241
                                                Denver, Colorado 80204
                                                Telephone: (202) 316-1591
                                                Email: matt@rhmtrial.com

        **Attorneys for *Plaintiff FLEET CONNECT SOLUTIONS LLC***

                                                * admitted to the Eastern District of Texas

**<u>Exhibits</u>**

1.   Fleet Connect First Set of Interrogatories

2.   Nextbase Supplemental Responses to First Set of Interrogatories

3.   Email dated July 29, 2025

4.   Omnivision Subpoena

5.   Ambarella Subpoena

6.   Email chain re: service on Ambarella

7.   Email chain re: International Discovery

8.   Letter sent by email, dated March 27, 2025

9.   Letter dated May 14, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on this day a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service.

Dated: <u>October 8, 2025</u>

By: <u>*/s/ James F. McDonough, III*</u>

James F. McDonough, III